UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ANDREW ALBERT,

        Plaintiff,

    v.                                            Case No. 20-C-1512

PIERCE MANUFACTURING, INC.,

        Defendant.

## DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Andrew Albert brought this action against Defendant Pierce Manufacturing, Inc., alleging that Pierce interfered with his rights under the Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. § 2601 *et seq.*, and retaliated against him for exercising his rights under the FMLA by terminating his employment. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331. Before the Court is Pierce's motion for summary judgment. For the following reasons, Pierce's motion will be granted.

### BACKGROUND

Pierce is a Wisconsin corporation that manufactures custom fire and rescue apparatuses. Pl.'s Proposed Findings of Fact (PPFOF), Dkt. No. 25, ¶ 1. On January 2, 2018, Pierce hired Albert to work as a rear body assembler/welder. *Id.* at ¶ 2. After being hired, Albert received a copy of Pierce's "Production Team Member Handbook," which outlines the policies and practices related to attendance and the use of family and medical leave. Def.'s Proposed Findings of Fact (DPFOF), Dkt. No. 21, ¶¶ 5–7. Pierce's attendance policy operates on a point system, where an employee is assessed an "occurrence" for each unexcused absence from scheduled work. *Id.* at

¶ 8. An employee can receive an occurrence for a full day absence, partial day absence, late arrival, or early departure. *Id.* After six occurrences, an employee is issued a written warning; after seven, an employee is issued a second written warning; after eight, an employee is issued a final warning and given a three-day unpaid suspension; and upon a ninth occurrence, an employee may be terminated. *Id.* at ¶¶ 9–12; Dkt. No. 28-6 at 9.

Pierce also maintains an FMLA policy that is administered by Cigna. DPFOF ¶¶ 14–15. The policy allows an employee to take FMLA leave on an "intermittent basis" when it is medically necessary to "care for a seriously ill family member or one's own serious health condition." *Id.* at ¶ 16; Dkt. No. 28-35 at 4. To initiate a claim to request FMLA leave, the employee must (1) contact Cigna and (2) notify Pierce per the business unit's normal call-in procedures. Dkt. No. 28-35 at 3–4. The policy provides that, "[u]nless extenuating circumstances disallow, team members must report the leave within two business days of learning of the need for leave." *Id.* at 3.

In October 2018, Albert's three-year-old daughter was diagnosed with a disorder on the autism spectrum. DPFOF ¶ 21. In early 2019, Albert submitted an FMLA certification for use of intermittent leave to assist his wife in caring for their daughter, and on March 5, 2019, Cigna issued Albert a "leave status determination letter," approving Albert's request for intermittent FMLA leave from January 21, 2019, through July 20, 2019. *Id.* at ¶¶ 23, 26; Dkt. No. 22-4 at 8. The letter indicated that Albert was "required to report [his] intermittent time used within 48 hours (2 business days) of taking the leave." Dkt. No. 22-4 at 8. In June 2019, Albert sought to extend his intermittent FMLA leave related to his daughter's health condition. DPFOF ¶ 31. On July 23, 2019, Cigna approved Albert's intermittent leave request from July 21, 2019, to January 20, 2020. Dkt. No. 28-9 at 1. The leave status determination letter again informed Albert that he was required to report intermittent leave to Cigna within 48 hours of taking the leave. *Id.* At his deposition,

2

Albert indicated that he had received these letters, read them, and previously followed the 48-hour requirement with respect to reporting his intermittent leave to Cigna. Dkt. No. 22-1 at 90:3–91:10. On July 23, 2019, Cigna sent Albert a letter advising that his requests for leave on February 28, 2019, June 3, 2019, and June 17, 2019, were denied because the "time exceeds the current parameters." DPFOF ¶ 39; Dkt. No. 28-31. Based on Cigna's denial, those three days were considered unexcused absences and amounted to three occurrences under Pierce's attendance policy. On September 9, 2019, Albert was suspended for three days without pay in accordance with Pierce's attendance policy because he had accumulated nine occurrences. *See* Dkt. No. 28-25. Albert was advised that "[a]dditional absenteeism will result in further discipline up to and including termination." *Id.*

On January 13, 2020, Cigna informed Albert that his intermittent leave was ending on January 20, 2020, and invited him to contact Cigna if he needed additional leave. PPFOF ¶¶ 72, 74. Albert attempted to access Cigna's online FMLA leave portal on approximately January 30, 2020, but was unable to do so. *Id.* at ¶ 75. After speaking with a Cigna representative, Albert learned that Cigna had "closed out his FMLA case" and that he was required to submit an entirely new FMLA claim. *Id.* at ¶¶ 76–77. Albert asserts that, because he could not submit absences under his old FMLA claim number, the Cigna representative told him to keep track of his absences and submit them to Cigna at a later time. *Id.* at ¶ 77. Pierce disputes that the Cigna representative gave such an instruction. It asserts that Cigna's investigation revealed that Albert was driving when he called the Cigna representative and was unable to confirm the information the representative needed, so the Cigna representative told Albert to call back with the dates when he was done driving, not to wait and report all of his time at some later date. DPFOF ¶ 64. Albert states that, on February 16, 2020, he completed the FMLA certification paperwork and faxed it to

3

Cigna, although he did not receive confirmation that the fax had been sent or a receipt for the transaction. *Id.* at ¶ 53. On February 26, 2020, Cigna denied Albert's leave request because he did not return his certification paperwork to Cigna. *Id.* at ¶ 54. After receiving the denial letter, Albert called Cigna, and a Cigna representative confirmed that Cigna had not received his certification paperwork. *Id.* at ¶¶ 54–55.

On March 10, 2020, Albert met with Allana Steele, a human resources professional employed by Pierce. *Id.* at ¶¶ 2, 56. Albert explained that Cigna had not received his recertification paperwork and that a Cigna representative had told him to keep a list of his FMLA absences and send the list with his recertification paperwork, rather than report that he used FMLA leave within 48 hours of taking the leave. *Id.* at ¶ 57. On March 12, 2020, Albert emailed a Cigna representative, reporting to Cigna, for the first time since his FMLA-approved leave had expired, the fifteen times he took FMLA leave. *Id.* at ¶ 62. On March 18, 2020, Cigna issued Albert a leave status determination letter, approving intermittent FMLA leave from January 21, 2020, through July 20, 2020. *Id.* at ¶ 67. That same day, however, Cigna issued Albert a letter denying his request for leave on thirteen separate dates because, although Albert immediately notified his supervisor of his absences when they occurred, he did not report the absences to Cigna within 48 hours of taking the leave. *Id.* at ¶¶ 70–71.

As a result of Cigna's denial, Albert's absences were not excused because they were not covered by the FMLA and were counted as separate occurrences under Pierce's attendance policy. *Id.* at ¶ 72. Pierce calculated that Albert had accrued seventeen occurrences in all, and it was recommended that he be terminated. *Id.* at ¶¶ 74–75. Pierce sent Albert a letter dated April 1, 2020, informing him that he had accumulated seventeen occurrences under the attendance policy,

he was in violation of the attendance policy and his last chance agreement, and his employment was terminated effective that day. *Id.* at ¶ 76.

## LEGAL STANDARD

Summary judgment is appropriate when the movant shows that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the Court must view the evidence and make all reasonable inferences that favor them in the light most favorable to the nonmoving party. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## ANALYSIS

Albert brought two causes of action against Pierce: one styled "FMLA Interference" and another styled "FMLA Retaliation." Dkt. No. 1 at 15–16. At this stage, however, Albert has elected "not to oppose [Pierce]'s motion" with respect to the retaliation claim because the relief sought by the interference claim "is identical to the relief sought" by the retaliation claim. Dkt. No. 24 at 2 n.1. Therefore, the Court will grant summary judgment in favor of Pierce with respect to Albert's retaliation claim and turns to the FMLA interference claim.

5

Under the FMLA, eligible employees are entitled to twelve weeks of unpaid leave per year for a variety of reasons, including when it is necessary to "care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition." 29 U.S.C. § 2612(a)(1)(C). The FMLA also makes it unlawful for any employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by the FMLA. 29 U.S.C. § 2615(a)(1). To succeed on an FMLA interference claim, Albert must show that "(1) he was eligible for the FMLA protections; (2) his employer was covered by FMLA; (3) he was entitled to take leave under FMLA; (4) he provided sufficient notice of [his] intent to take leave; and (5) [his] employer denied [him] FMLA benefits to which he was entitled." *James v. Hyatt Regency Chi.*, 707 F.3d 775, 780 (7th Cir. 2013) (quoting *Goelzer v. Sheboygan Cty., Wis.*, 604 F.3d 987, 993 (7th Cir. 2010)). Here, there is no dispute as to the first three elements. The dispute instead centers on whether Albert provided sufficient notice of his intent to take FMLA leave and whether Pierce improperly denied FMLA benefits.

Pierce argues that, because Albert failed to comply with the 48-hour reporting requirement contained in its FMLA policy and Cigna's leave status determination letters, he was not entitled to FMLA protection for those absences. As explained in the determination letters, Albert was required to report the intermittent time he used to Cigna within 48 hours of taking the leave, either by contacting Cigna through a call center or by using Cigna's online portal, and to follow Pierce's call-in procedures. *See* Dkt. No. 22-4 at 8–9. Albert argues that Pierce's usual and customary procedural requirements for requesting leave do not require that employees provide notice to Cigna. He further argues that Pierce's FMLA policy does not require that he give notice to Cigna within 48 hours, and that even if it did, "unusual circumstances" exist that excuse his failure to do so.

6

When FMLA leave is foreseeable, an employer "may require an employee to comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances." 29 C.F.R. § 825.302(d). Where FMLA leave is unforeseeable, "an employee *must* comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances." 29 C.F.R. § 825.303(c) (emphasis added). The question here, then, is whether Pierce's requirement that an employee give Cigna notice within 48 hours of taking leave constitutes a "usual and customary" notice requirement. The Court concludes that it does. Pierce's FMLA policy unambiguously requires that, for intermittent FMLA leave, employees "give notice of leave as indicated in section IV above." Dkt. No. 28-35 at 6. Section IV provides that an individual is to both contact Cigna and notify Pierce per the business unit's normal call-in procedures. *Id.* at 3. The section also states that, unless extenuating circumstances disallow, "team members must report the leave within two business days of learning of the need for leave." *Id.* The fact that this procedure is usual and customary is reinforced by the fact that the leave status determination letters Cigna issued to Albert include the same directions: an employee must contact Cigna by phone or through the online portal within 48 hours of taking the leave and follow Pierce's call-in procedures. Dkt. No. 22-4 at 8–9. Allana Steele, a human resources professional employed by Pierce, also testified to the existence and use of the 48-hour rule, further underscoring that it is a usual and customary requirement for requesting FMLA leave. Dkt. No. 28-34 at 41:13–14.

Albert argues that, in the context of § 825.303(c), the question is not whether he followed Pierce's usual and customary procedures for FMLA leave but rather whether he followed the usual and customary procedures for leave *generally*. Dkt. No. 24 at 22. Albert relies heavily on *Moore v. GPS Hospitality Partners IV, LLC*, 383 F. Supp. 3d 1293 (S.D. Ala. 2019), for the proposition

7

that the phrase "usual and customary notice and procedural requirements for requesting leave" is limited "to those requirements applicable to leave generally" and not to the "more stringent requirements the employer imposes on FMLA leave requests in particular." *Id.* at 1303–04. But *Moore* is not binding on this Court, and accepting its reading of the regulations in question would effectively prevent companies from placing additional requirements on employees who seek FMLA leave, no matter how easy it may be to comply with those requirements. Indeed, courts have consistently held that an employer may require additional procedures for giving notice of FMLA leave. *See, e.g.*, *Int'l Bhd. of Elec. Workers Local 1600 v. PPL Elec. Utilities Corp.*, Nos. 5:16-cv-04675, 5:16-cv-04676, 2017 WL 6547138, at *5 (E.D. Pa. Dec. 22, 2017) ("[T]he 'usual and customary' requirements act as a floor, not a ceiling. Therefore, nothing in 29 C.F.R. § 825.303(c) prohibits PPL's two-call policy."); *Munger v. Cascade Steel Rolling Mills, Inc.*, No. 3:18-cv-00970-SB, 2021 WL 2482682, at *6 (D. Or. June 17, 2021) ("[T]he Court concludes that Cascade's medical leave policy requiring FMLA claimants to contact a third-party administrator to submit a FMLA claim does not violate the FMLA.").

This case is remarkably similar to *Reese v. Zimmer Production, Inc.*, No. 1:17-cv-105-TLS, 2018 WL 4510453 (N.D. Ind. Sept. 19, 2018). There, the plaintiff asserted its former employer, Zimmer Production, violated the FMLA when it assessed attendance points for absences that he maintained qualified as FMLA leave and ultimately terminated his employment. Zimmer Production's FMLA policy required that its employees provide notice to both the company and its third-party administrator, Unum, of all FMLA leave. *Id.* at *2. When an employee took unforeseeable intermittent FMLA leave, the employee was required to notify Unum within two business days of the absence, "absent proven extenuating circumstances that prevented timely notice." *Id.* The plaintiff was denied FMLA coverage for two absences because, although he

timely informed his supervisor of his absence, he failed to notify Unum within two days of those absences. *Id.* The court determined that Zimmer Production's rules for providing notice were neither inconsistent with FMLA regulations nor discriminatory against employees attempting to take FMLA leave. *Id.* at *4. It reasoned that "[i]f the Plaintiff wanted FMLA leave, § 825.303(c) dictates that he comply with his employer's policies. When he did not follow the notice requirement, the employer was within its right to deny leave." *Id.* (citing *Aubuchon v. Knauf Fiberglass GmbH*, 359 F.3d 950, 951–52 (7th Cir. 2004)).

The same analysis applies with equal force to this case. When Albert wished to take intermittent FMLA leave, he was required to contact Cigna within 48 hours of taking the leave and his supervisor in accordance with Pierce's regular call-in procedures. Albert notified his supervisor of his absences but failed to timely contact Cigna, resulting in the accumulation of attendance points under Pierce's attendance policy and, ultimately, the termination of his employment. Pierce's policy that employees call its third-party FMLA administrator within 48-hours of taking unforeseeable intermittent FMLA leave does not violate the FMLA or discriminate against employees attempting to take such leave. The 48-hour rule is a "usual and customary" notice requirement, and § 825.303(c) mandates compliance with such employer policies, absent unusual circumstances.

Albert argues unusual circumstances exist in this case that justify his failure to comply with Pierce's notice requirement. Although Albert concedes that he knew about the 48-hour rule and had complied with the rule in the past, Dkt. No. 22-1 at 90:3–91:10, he asserts that he was not required to follow the rule because a Cigna representative told him to keep track of his absences and submit them at a later time. PPFOF ¶ 77. Albert only offers a reason for why he *failed* to comply with Pierce's policy; he has not offered any unusual circumstances that *prevented* him

from complying with the notice requirements. This distinction is important, as courts have held that an employer may enforce its usual and customary notice requirements unless the employee was prevented from complying with such procedures. *See, e.g.*, *Acker v. Gen. Motors, LLC*, 853 F.3d 784, 789 (5th Cir. 2017) ("[I]n order to establish FMLA interference, [the plaintiff] has to show that for each of these non-FMLA-approved absences, unusual circumstances prevented him from following the union-negotiated procedures."); *Soriano v. City of East Chi.*, No. 13-C-439, 2016 WL 1244015, at *5 n.2 (N.D. Ind. Mar. 30, 2016) (noting that "an employer may enforce its customary notice policies unless 'unusual circumstances' prevent the employee from providing the otherwise-required notice" (citing 29 C.F.R. § 825.303)). Albert had consistently complied with the 48-hour rule before his intermittent FMLA leave had expired and has not presented any evidence that unusual circumstances prevented him from complying with Pierce's notice requirement. Because Albert failed to comply with Pierce's usual and customary notice requirement that employees provide notice to Cigna within 48 hours of taking FMLA leave, Pierce was "within its right to deny leave." *Reese*, 2018 WL 4510453, at *4. Therefore, Pierce did not interfere with Albert's FMLA rights when it terminated his employment due to an accumulation of points under its attendance policy. 29 C.F.R. § 825.303(c).

Pierce, as an alternative argument, invokes the "honest belief" rule, "which in this context means that while the company may have been mistaken in concluding [Albert] actually had committed fraud, at the very least it had an honest belief that [he] had done so." *See Kariotis v. Navistar Intern. Transp. Corp.*, 131 F.3d 672, 674 (7th Cir. 1997); *see also Clay v. Holy Cross Hosp.*, 253 F.3d 1000, 1007 (7th Cir. 2001) ("This circuit adheres to the honest-belief rule: even if the business decision was ill-considered or unreasonable, provided that the decisionmaker honestly believed the nondiscriminatory reason he gave for the action, pretext does not exist."

(citations omitted)). Pierce asserts that it had an honest belief that Albert's "allegation that Cigna advised him to disregard the 48-hour policy was not true and that Plaintiff misrepresented this aspect of his attempt to utilize FMLA leave." Dkt. No. 20 at 20. To support its assertion that it had an honest belief that Albert misrepresented his stated reason for disregarding his reporting obligation, Pierce points to an internal investigation it conducted with Cigna regarding Albert's claims.

According to Pierce, Steele requested that Cameron Raine, a Cigna leave analyst, listen to the call between Albert and the Cigna representative who allegedly told him to wait to report the days he took FMLA leave. DPFOF ¶ 59. On March 13, 2020, Priscilla Thomas, a client service partner at Cigna, emailed Steele regarding the findings of Cigna's call trace. *Id.* at ¶ 64. The email revealed that the Cigna representative told Albert to "report the time missed if it was missed due to incapacity or office visits for his daughter," but that "since [Albert] was driving and unable to confirm the information needed," the representative "advised Albert to call back with that information, but did not advise him to wait and report all of his time." *Id.* Pierce argues that the results of this investigation led it to form an honest belief that Albert's recounting of the phone call was not true and that he misrepresented this aspect of his attempt to utilize FMLA leave. It asserts that Albert's claim "defied common sense" and that it "did not believe that its own administrator, Cigna, contracted by Pierce to apply Pierce's FMLA policy . . . would instruct a Pierce employee to disregard Pierce's notification requirements—the very same notice requirements of Pierce that Cigna emphasizes in its Leave Status Determination letters to employees, and it routinely enforces." Dkt. No. 20 at 20.

Albert does not dispute the application of the honest belief doctrine to this case but argues that Thomas' email to Steele is inadmissible "hearsay within hearsay" under Federal Rule of

11

Evidence 805. Dkt. No. 24 at 26 n.145. The email is not hearsay because it is not being offered for the truth of the matter asserted. *See* Fed. R. Evid. 801(c)(2). Instead, it is being offered to demonstrate the effect that the email had on Steele, namely, that Steele relied on the email from Cigna, regardless of whether it was true, that indicated a Cigna representative had never advised Albert to wait and report all of his time at a later date, and formed an honest belief that Albert misrepresented what Cigna told him during the phone call.

The Court concludes that Pierce had an honest belief that Albert's reason for disregarding the 48-hour rule was not truthful. Based on its honest belief, Pierce determined that Albert's absences were not covered by the FMLA and ultimately terminated Albert's employment based on his violation of the attendance policy. In the end, it is not for the Court to decide whether Pierce's belief was correct. The federal courts are not to act as "a super-personnel department that second-guesses" whether the evidence an employer relied upon was reasonable under these circumstances. *See Boss v. Castro*, 816 F.3d 910, 917 (7th Cir. 2016) (citation omitted); *see also Kariotis*, 131 F.3d at 679 ("[W]hatever curious process a company employs to reach its decision is irrelevant so long as nothing in the record suggests that the process is discriminatory . . . ."); *Hamm v. Nestle USA, Inc.*, No. 12-CV-2427, 2013 WL 4401328, at *7 (N.D. Ill. Aug. 15, 2013) (noting that the "relevant question is whether the employer had an 'honest suspicion'—even if incorrect—that the employee was misusing FMLA." (citing *Scruggs v. Carrier Corp.*, 688 F.3d 821, 824 (7th Cir. 2012))). Because Albert has not presented evidence to rebut Pierce's showing of honest belief, summary judgment in favor of Pierce is also appropriate on this basis.

Finally, Albert argues that Pierce interfered with his FMLA rights when it suspended him without pay on September 9, 2019. Recall that Albert was suspended for accumulating too many attendance points under Pierce's attendance policy. *See* Dkt. No. 28-25. The attendance policy

provides that an employee may be suspended when he or she reaches eight occurrences. DPFOF ¶¶ 9–12. Pierce suspended Albert for three days without pay, based on its determination that he had accumulated nine occurrence points. But the day Albert's suspension began, the June 17, 2019, occurrence was rescinded and approved as FMLA leave. PPFOF ¶ 65. Albert contends that, because the June 17, 2019, absence was listed on his employee disciplinary notice as an unexcused absence but later approved as FMLA leave, Pierce interfered with his FMLA rights by suspending his employment based, at least in part, on the FMLA-related absence. Dkt. No. 24 at 27. Pierce counters that it did not interfere with Albert's FMLA rights and that his suspension was valid under the attendance policy because, even without considering the later-approved FMLA absence, he had accrued the eight occurrences required to trigger his three-day unpaid suspension. DPFOF ¶¶ 9–12. The Seventh Circuit has recognized that "an employee is not entitled to return to her former position if she would have been fired regardless of whether she took the leave." *Goelzer v. Sheboygan Cty., Wis.*, 604 F.3d 987, 993 (7th Cir. 2010). The same general principle applies here. Albert would have been suspended with or without the unapproved FMLA absence on his record and "regardless of whether [he] took the leave." *Id.* Pierce did not interfere with Albert's rights under the FMLA by suspending him for absences that were not FMLA-related.

## CONCLUSION

For these reasons, Pierce's motion for summary judgment (Dkt. No. 19) is **GRANTED**. The case is dismissed. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** at Green Bay, Wisconsin this 20th day of January, 2022.

s/ William C. Griesbach
William C. Griesbach
United States District Judge